OPINION OF THE COURT
Simons, J.
This is one of 15 similar actions pending in the First Department seeking to recover from pharmaceutical companies for injuries allegedly sustained by the plaintiff daughters as a result of their mothers’ ingestion of the drug diethylstilbestrol (DES) while pregnant. In 1977 the Assistant Administrative Justice designated the actions as “complex litigation cases” and assigned them to Justice Arnold Fraiman, directing him to handle all matters relating to them. The first of the 15 actions chosen to be tried was Bichler v Lilly & Co. (55 NY2d 571) and the rest were held pending its disposition. The principal issue in this appeal is the collateral estoppel effect to be given to certain jury findings in that action.
After we sustained a jury verdict against Lilly in Bichler, plaintiff moved for partial summary judgment precluding Lilly from relitigating six issues decided by the Bichler jury, a severance of the action against Lilly and an immediate trial on the issues of DES ingestion, causation and damages. Lilly cross-moved to depose two of the jurors in the Bichler case to establish that their verdict was a compromise. The remaining defendants cross-moved for a severance in the event the court granted plaintiff’s motion for collateral estoppel against Lilly. Special Term granted plaintiff’s motion for partial summary judgment, denied Lilly’s cross motion and granted the codefendants’ motions for a severance. A divided Appellate Division affirmed and granted Lilly leave to appeal to this court on a certified question. We now modify the order of the Appellate Division and hold that Lilly may not be collaterally estopped from relitigating the jury’s finding that it acted in concert with other drug manufacturers in testing and marketing DES for use in treating accidents of pregnancy. Our modification is required because the concerted action liability found in Bichler was based on an unresolved question of law which should not be given preclusive effect in this litigation.
I
In early 1954, plaintiff’s mother, then pregnant with her, was prescribed DES to prevent a miscarriage. In July 1973, when *454 plaintiff was 18 years old, it was discovered that plaintiff had cancer of the cervix. A radical hysterectomy was performed and, as a result, plaintiff will be unable to bear children. She instituted this action in 1976 alleging in her amended complaint that her mother’s ingestion of DES while pregnant was the proximate cause of the injuries she sustained. Because she was unable to clearly identify the manufacturer of the DES her mother took, plaintiff joined as defendants nine of the approximately 147 pharmaceutical companies manufacturing and marketing DES for the prevention of miscarriages in pregnant women in 1954. She alleged that the defendants were liable to her, inter alia, on a concerted action theory of liability because they had “combined and conspired to obtain the approval for DES” without adequate testing.
The Bichler action involved a young woman who developed cervical and vaginal cancer at the age of 17. She brought suit against Eli Lilly & Company and others, alleging that her mother’s ingestion of DES in 1953 while she was pregnant with her caused her injuries. Plaintiff’s theory was that DES had been marketed without adequate testing to determine its safety. After the plaintiff was unsuccessful in attempting to prove that Lilly manufactured the DES prescribed for her mother, she submitted her case to the jury on a concerted action theory of liability. In addition to returning a general verdict for plaintiff, the Bichler jury answered seven special interrogatories in her favor as a basis for imposing liability on Lilly.[1] On appeal the Appellate Division and this court affirmed. The courts below *455 gave collateral estoppel effect in this action to six of the Bichler jury’s findings.[2]
Lilly raises three grounds for reversal of the order granting that relief. First, it contends that the decision in Bichler should not be given collateral estoppel effect because (1) the cases do not raise identical issues, (2) there are indications that the Bichler verdict was based on jury compromise, (3) there are adjudications inconsistent with Bichler on each of the issues involved and (4) the Bichler decision is based on an unresolved and novel application of the law of concerted action not expressly adopted in New York. Second, Lilly asserts that if we find its proof of jury compromise in Bichler insufficient as it now exists to defeat the application of collateral estoppel, it should be allowed to depose two named jurors from the Bichler jury to demonstrate further its contention. Finally, Lilly urges that the lower court erred in severing plaintiff’s action against it from actions against the remaining defendants.
II
The doctrine of collateral estoppel precludes a party from relitigating “an issue which has previously been decided against him in a proceeding in which he had a fair opportunity to fully litigate the point” (Gilberg v Barbieri, 53 NY2d 285, 291; see, Schwartz v Public Administrator, 24 NY2d 65, 69). It is a doctrine intended to reduce litigation and conserve the resources of the court and litigants and it is based upon the general notion that it is not fair to permit a party to relitigate an issue that has already been decided against it. There are now but two requirements which must be satisfied before the doctrine is invoked. First, the identical issue necessarily must have been decided in the prior action and be decisive of the present action, and second, the party to be precluded from relitigating the issue must have had a full and fair opportunity to contest the prior determination (Gilberg v Barbieri, supra, at p 291; Schwartz v Public Administrator, supra, at p 71; see, Koch v Consolidated Edison *456 Co., 62 NY2d 548, 554-555, cert denied _ US _, 105 S Ct 1177; Ryan v New York Tel. Co., 62 NY2d 494, 500-501). The party seeking the benefit of collateral estoppel has the burden of demonstrating the identity of the issues in the present litigation and the prior determination, whereas the party attempting to defeat its application has the burden of establishing the absence of a full and fair opportunity to litigate the issue in the prior action (see, Ryan v New York Tel. Co., supra, at p 501; Schwartz v Public Administrator, supra, at p 73). Applying these rules, we hold that collateral estoppel effect should be denied for the Bichler jury’s finding on concerted action but that Lilly should be precluded from relitigating the five remaining issues relevant to this action and decided adversely to it in that trial (see, n 2, at p 455, supra).
A
When Bichler was before this court Lilly challenged the concerted action theory of liability on two grounds. It claimed that it was not an appropriate theory of liability in DES litigation when the identity of the manufacturer is not established and that the court’s charge on the theory was erroneous. Although both of these issues could have been raised by appropriate objection in the trial court, they were not, and because they were not, we did not pass on them. We held only that the evidence was legally sufficient to support the jury’s findings of concerted action and foreseeability based on the charge given and that the trial court did not err in refusing Lilly’s request to charge on its duty to warn (see, Bichler v Lilly & Co., 55 NY2d 571, 584-587, supra). We noted in a footnote that there were several theories upon which similar DES cases were proceeding or it had been suggested they might proceed but we expressed no view in Bichler and, express none now, on which of the proposed theories — concerted action, alternative liability, enterprise liability or market share liability — if any, should be adopted in this or similar DES cases (see, Bichler v Lilly & Co., supra, at p 580, n 5). The question is still an open one in New York.
The point is significant because collateral estoppel effect will only be given to matters “actually litigated and determined” in a prior action (see, Restatement [Second] of Judgments §27, quoted in Koch v Consolidated Edison Co., 62 NY2d 548, 554, n 2; see also, Ryan v New York Tel. Co., 62 NY2d 494, supra). If the issue has not been litigated, there is no identity of issues between the present action and the prior determination. An issue is not actually litigated if, for example, there has been a *457 default, a confession of liability, a failure to place a matter in issue by proper pleading or even because of a stipulation (see, Restatement [Second] of Judgments § 27 comments d, e, at 255-257; see also, Gilberg v Barbieri, 53 NY2d 285, supra). Because Lilly did not challenge the appropriateness of the concerted action theory in Bichler, it was not actually litigated and there is no identity between that issue in Bichler and here. Although it may seem a paradox that we should permit defendant to benefit in this litigation because of its failure to challenge concerted action in the prior litigation, the policy reasons for refusing to do so outweigh the reasons for limiting litigation on the issue. It is of paramount importance that the courts establish and develop the law in this emerging area of mass tort liability, rather than permit it to be fixed, even in this limited number of DES actions, on the basis of the law of the case. The need for uniformity and certainty mandates that in such cases collateral estoppel should be rejected (see, Schwartz v Public Administrator, 24 NY2d 65, 72, supra; Restatement [Second] of Judgments § 28 comment b, at 275-276; see, id. § 29 [7] and comment i, at 292, 297). This is particularly so when the other defendants will be free to claim, against this same plaintiff, that concerted action is not an appropriate theory of liability and thereby cause inconsistent results.
B
The fact that no exception was taken to the charge on concerted action, however, has no bearing on the factual issues resolved by the jury when it answered the remaining interrogatories and Lilly should be precluded from relitigating them. Identity of issues does exist as to them because the legal theory in both actions is the same and because there are no significant factual differences between them. The plaintiff in Bichler, the first of the 15 related cases chosen to be tried, sought to establish Lilly’s negligence in testing and marketing DES. The issues Lilly will be precluded from relitigating in this case relate solely to the facts underlying its negligence in testing, questions found against it by the Bichler jury and questions which are also involved in this case. Moreover, both plaintiffs’ mothers ingested DES in the same time period (1953-1954), both plaintiffs were born in 1954 within seven months of each other and both developed cancer of the cervix and/or vagina at approximately the same age. The issue of proximate cause has been specifically deleted from the Bichler interrogatories by plaintiff’s motion *458 and Lilly will have the opportunity to demonstrate that plaintiff’s injuries were not caused by her mother’s ingestion of DES due to minor differences between the plaintiffs or the circumstances surrounding their mothers’ ingestion of DES. Thus, the appeal fits the example described by Professors James and Hazard of an instance in which there are several similar cases and the first tried is “roughly typical” of the rest. In that situation, the professors noted, it is not unfair to preclude the defendant from retrying the issues previously litigated and decided adversely to it (James & Hazard, Civil Procedure § 11.24, at 581 [2d ed]).
Similarly unpersuasive is Lilly’s assertion that the Bichler verdict is not entitled to collateral estoppel effect because there are indications it was the result of jury compromise. Although indications of jury compromise is one factor properly to be considered in determining whether a party against whom collateral estoppel is sought had a full and fair opportunity to litigate the issues in the prior determination (see, Koch v Consolidated Edison Co., 62 NY2d 548, 555, n 4, supra, quoting Schwartz v Public Administrator, 24 NY2d 65, 72, supra), the evidence offered to defeat application of the doctrine in this case is insufficient. Lilly relies only on inadmissible hearsay allegations contained in an affidavit of its former attorney in which he alleges that he interviewed three Bichler jurors immediately after the verdict and that one of them told him there had been a compromise and on Lilly’s speculation that a compromise resulted because the jury returned its verdict after five days of apparently hopeless deadlock. As we recently emphasized in Koch, evidence of this nature is not sufficient to defeat a motion for partial summary judgment on collateral estoppel grounds (see, Koch v Consolidated Edison Co., supra, at p 557).
Finally, although adjudications on the same issue inconsistent with the one to be given preclusive effect are relevant evidence that the party contesting estoppel did not have a fair opportunity to litigate the prior determination and may be a factor in refusing to apply the doctrine of collateral estoppel (see, id., at p 555, and n 4, quoting Restatement [Second] of Judgments § 29 [4]), the cases relied on by Lilly do not support that result here. Those cited include generally cases in which the jury returned a verdict for Lilly on a failure to warn theory[3] and *459 others in which the court granted Lilly judgment either because concerted action was an inappropriate legal theory for DES litigation or because the evidence was insufficient to raise a factual issue on concerted action.* *[4] Those in the first group are not inconsistent with the Bichler jury’s responses to the interrogatories finding Lilly negligent on a theory of inadequate testing. The second group, cases involving summary judgment and directed verdicts in Lilly’s favor, support Lilly’s contention that it should not be estopped from contesting liability on the theory of concerted action but we have found in its favor on that issue on other grounds. Thus, contrary to its contentions, those cases provide no basis for permitting Lilly to relitigate the remaining issues involving Lilly’s negligence. In only one case cited by Lilly did a jury return a verdict inconsistent with Bichler on the issue of inadequate testing (see, Barros v Squibb & Sons, Civ Act No. 75-1226 [ED Pa 1976]). Lilly relies on that decision and claims the benefit of that jury determination although it was not a party to the litigation. We find no basis to nullify the jury findings in Bichler, the first case tried of the several pending before Justice Fraiman and a case in which Lilly participated fully, on the basis of the Squibb verdict, a case in which it did not participate at all. Lilly can hardly claim that the Squibb determination provides any indication that it lacked a full and fair opportunity to defend against the issues decided adversely to it in Bichler.
*460 in
Two other matters remain for our consideration. Notwithstanding the insufficiency of its evidence to support a finding of a compromise verdict in Bichler, Lilly contends that it should be allowed to depose two Bichler jurors in order to further substantiate its claim. It asserts that our firm rule against impeaching a verdict in the action in which it was rendered is inapplicable here when its attack is not for the purpose of impairing the Bichler verdict but for the purpose of preventing collateral estoppel effect to be given it. The policy reasons behind the rule are to prevent “the posttrial harassing of jurors for statements which might render their verdicts questionable” and to avoid the chaos that a contrary rule would create (People v De Lucia, 20 NY2d 275, 278; see, McDonald v Pless, 238 US 264, 267-268; King v United States, 576 F2d 432, 438 [2d Cir]). They are equally applicable to this case. Moreover, it is not insignificant that the desire to depose the jurors is intended to impair the effect of factual findings made in the first of several related cases selected for trial.
Finally, we cannot find that the trial court abused its discretion as a matter of law in severing plaintiff’s action against Lilly from her action against the other defendants, particularly in light of the obvious prejudice the other defendants would suffer if they were forced to litigate the action with Lilly despite our conclusion that it is precluded from relitigating the findings of negligence as made in Bichler.
Accordingly, the order of the Appellate Division should be modified by denying plaintiff summary judgment as to the collateral estoppel effect of the Bichler jury’s finding that defendant Lilly and other drug manufacturers acted in concert in testing and marketing DES for use in treating accidents in pregnancy (interrogatory No. 7) and, as so modified, the order should be affirmed. The certified question is answered in the negative.
Chief Judge Wachtler and Judges Jasen, Kaye, Titone and Boomer* concur; Judges Meyer and Alexander taking no part.
Order modified, without costs, in accordance with the opinion herein and, as so modified, affirmed. Question certified answered in the negative.

. The interrogatories and the jury’s answers to them were as follows: “(1) Was DES reasonably safe in the treatment of accidents of pregnancy when it was ingested by plaintiff’s mother in 1953? (No)
“(2) Was DES a proximate cause of plaintiff’s cancer? (Yes)
“(3) In 1953 when plaintiff’s mother ingested DES, should the defendant, as a reasonably prudent drug manufacturer, have foreseen that DES might cause cancer in the offspring of pregnant women who took it? (Yes)
“(4) Foreseeing that DES might cause cancer in the offspring of pregnant women who took it, would a reasonably prudent drug manufacturer test it on pregnant mice before marketing it? (Yes)
“(5) If DES had been tested on pregnant mice, would the tests have shown that DES causes cancer in their offspring? (Yes)
“(6) Would a reasonably prudent drug manufacturer have marketed DES for use in treating accidents of pregnancy at the time it was ingested by the plaintiff’s mother if it had known that DES causes cancer in the offspring of pregnant mice? (No)
“(7) Did defendant and the other drug manufacturers act in concert with each other in the testing and marketing of DES for use in treating accidents of pregnancy? (Yes)”. (See, Bichler v Lilly & Co., 55 NY2d 571, 587, n 10, supra.)

. In her motion for summary judgment, plaintiff deleted the second Bichler interrogatory dealing with proximate cause. There is one other difference between the Bichler interrogatories and the issues on which plaintiff seeks partial summary judgment in this case. In the first, third and sixth Bichler interrogatories, the relevant time period was changed from 1953 (when Mrs. Bichler ingested DES) to 1953-1954 (when plaintiff’s mother ingested the drug). Contrary to Lilly’s claim, these variations in the years do not destroy the identity of issues. That plaintiff’s mother took the drug in 1954 could not mitigate the failure to test found wanting in 1953 or lessen the basis of knowledge upon which a duty to warn cause of action rests.

. See, Mink v University of Chicago, No. 77-C-1432 (ND 111 Mar. 24,1983); Keil v Lilly & Co., No. 75-70997 (ED Mich 1981); Sardell v Lilly & Co., No. 18268/77 (NY Sup Ct, Kings County, Nov. 24,1982); see also, Miller v Lilly & *459 Co., No. CV 80 0047107 S (Conn Super Ct, Feb. 20, 1985 [jury finding of no ingestion or causation]).

. See, Tidier v Lilly & Co., 95 FED 332 (DDC 1983); Morton v Abbott Labs., 538 F Supp 593 (MD Fla 1982); Ryan v Lilly & Co., 514 F Supp 1004 (DSC 1981); Payton v Abbott Labs, 512 F Supp 1031 (D Mass 1981); Zafft v Lilly & Co., 676 SW2d 241 (Mo 1984); Martin v Abbott Labs., 102 Wn 2d 581, 689 P2d 368 (1984); Collins v Lilly & Co., 116 Wis 2d 166,342 NW2d 37 (1984). Nor is McElhaney v Lilly & Co. (575 F Supp 228 [DSD 1983], affd 739 F2d 340 [8th Cir]) persuasive on this point. In McElhaney, Lilly won a directed verdict when the plaintiff conceded that she could offer no proof that Lilly knew or should have known of the dangerous condition of DES. This admission was fatal to her strict products liability action under section 402A of the Restatement (Second) of Torts. When no similar concession was made in Bichler, the jury found that Lilly should have foreseen that the use of DES in pregnant women would be dangerous. Thus, there is nothing to indicate that a jury in the McElhaney case would have reached an opposite conclusion absent the plaintiff’s concession there. Similarly, the directed verdict for Lilly in McMahon v Lilly & Co. (No. 82 C 2822 [ND 111 1984]) is not inconsistent with Bichler because it was based solely on the plaintiff’s failure to make a prima facie showing that Lilly manufactured the DES that her mother ingested or that Lilly knew or should have known of the risk of preterm labor or prematurity among pregnant DES daughters, a risk not even at issue in either Bichler or this case.

 Designated pursuant to NY Constitution, article VI, § 2.