784 F.2d 116
 In re GRAND JURY SUBPOENA DATED JANUARY 30, 1986 TO BRONX
DEMOCRATIC PARTY, Secretary/Treasurer Stanley Friedman.
BRONX COUNTY DEMOCRATIC COMMITTEE and Stanley M. Friedman,
Plaintiffs-Appellants,
v.
Hon. Robert L. CARTER, Individually and as Judge of the
United States District Court for the Southern District of
New York and Rudolph W. Giuliani, Individually and as United
States Attorney for the Southern District of New York,
Defendants-Appellees.
 Nos. 955, 956, Dockets 86-6039, 86-6041.
 United States Court of Appeals,
Second Circuit.
 Argued Feb. 14, 1986.
Decided Feb. 14, 1986.
 
 Thomas G. Puccio, New York City (Joann Crispi, Mary J. Fahey, Stroock & Stroock & Lavan, of counsel), for plaintiff-appellant Stanley M. Friedman.
 Robert F. Katzberg, Kaplan & Katzberg, New York City, for plaintiff-appellant Bronx County Democratic Committee.
 William J. Schwartz, Asst. U.S. Atty., S.D.N.Y. (Rudolph W. Giuliani, U.S. Atty., Stuart E. Abrams, Asst. U.S. Atty., New York City, of counsel), for defendants-appellees.
 Before LUMBARD, PIERCE and ALTIMARI, Circuit Judges.
 PER CURIAM:
 
 
 1
 Stanley M. Friedman and the Bronx County Democratic Committee (Committee) appeal from an order of the United States District Court for the Southern District of New York, Edelstein, Judge, denying appellant Friedman's motion to intervene and quash or modify a grand jury subpoena duces tecum and denying both appellants' motion for a preliminary injunction enjoining enforcement of the subpoena.
 
 
 2
 On January 30, 1986, a grand jury sitting in the Southern District of New York issued a subpoena duces tecum to the Secretary/Treasurer of the "Bronx Democratic Party" calling for the production of six categories of documents including, inter alia, all records relating to "contributions made to any and all candidates for elective office and contributions made to any and all political committees and party sub-committees" as well as "[l]ists of all contributors, date and amount of contributions to Bronx Democratic Party and all Queens [sic] Democratic Party sub-committees." The subpoena was returnable on Friday, January 31, 1986, forthwith and was served on the Committee by two FBI agents at 11:30 a.m. on January 31. Later that day, counsel for Friedman telephoned the Assistant United States Attorney (hereinafter referred to as the Government) to protest that counsel needed more time in which to examine the documents on behalf of his client, who is the chairman of the Committee. The Government replied that compliance was required forthwith and that it was prepared to defend the subpoena in court. At approximately 4:00 p.m., the government obtained an ex parte order from the United States District Court for the Southern District of New York, Carter, Judge, compelling production of the documents sought in the subpoena by 7:30 p.m. The order was read over the telephone to the Secretary of the Committee, Murray Lewinter; the government told him that non-compliance would lead to a contempt citation and incarceration. At approximately 6:00 p.m., counsel for the Committee brought on a motion to quash the subpoena before Judge Carter; the judge denied the motion after argument, and ordered production of the documents. The documents were produced that night. The Government agreed, however, to leave them unexamined in a sealed carton until Wednesday, February 5, 1986 at 2:00 p.m. when Lewinter, or a suitable substitute, was required to appear as a custodial witness to authenticate the documents before the grand jury.
 
 
 3
 Before the grand jury convened, however, appellants attempted to obtain relief from Judge Edelstein, who was then sitting in Part I. On the morning of February 5, Friedman moved to intervene in the action and obtain an order quashing or modifying the subpoena; Friedman and the Committee also filed a civil suit against Judge Carter and United States Attorney Rudolph Giuliani, claiming that enforcement of the subpoena would violate appellants' First Amendment rights of association and political expression and would have a chilling effect on the exercise of such rights by others. Accordingly, the appellants moved in a civil suit for a preliminary injunction preventing the subpoena's enforcement. After hearing oral argument, Judge Edelstein denied the relief sought and ordered appellants to comply with the subpoena. A new order was issued directing Lewinter to appear before the grand jury to produce and authenticate the records at 2:30 p.m. on February 5, 1986. Friedman and the Committee appealed to this court, which granted a stay of these orders pending these appeals. We announced our decision in open court on February 14, with a written opinion to follow. For the reasons set forth below, we vacated our stay and dismissed the appeals.
 
 
 4
 It is well-settled that a person who has been served with a subpoena may not appeal an order denying a motion to quash without first resisting and undergoing the penalty of a contempt citation. Cobbledick v. United States, 309 U.S. 323, 327-28, 60 S.Ct. 540, 542-43, 84 L.Ed. 783 (1940); In re Two Grand Jury Subpoenae Duces Tecum, 769 F.2d 52, 54 (2d Cir.1985); In re Katz, 623 F.2d 122, 124 (2d Cir.1980). The rule prevents obstruction of grand jury proceedings, Cobbledick, 309 U.S. at 327, 60 S.Ct. at 542, and curtails appeals, and the delays that they cause, by forcing both sides to "take a second look." As Judge Friendly noted in National Super Spuds, Inc. v. New York Mercantile Exchange, 591 F.2d 174 (2d Cir.1979), "[b]oth sides benefit from having a second look. The person ordered to respond may decide ... that the importance of the issue and the risk of adverse appellate determination do not warrant being branded as a contemnor. Conversely the person seeking the information, particularly if he is the plaintiff, may decide that the quest is not important enough to seek a contempt citation, thereby entailing the delay of an appeal." Id. at 180 (citation omitted).
 
 
 5
 Under this established precedent, a representative of the Committee must be adjudicated to be in contempt before there can be an appeal of Judge Carter's denial of the motion to quash the subpoena. There is an exception to this rule, first enunciated in Perlman v. United States, 247 U.S. 7, 38 S.Ct. 417, 62 L.Ed. 950 (1918), that allows an immediate appeal from the denial of a motion to quash--without the prerequisite of an adjudication in contempt--when a person seeks to quash a subpoena directed to another, enforcement of which could violate one or more of the constitutional rights of the person not served. See In re Two Grand Jury Subpoenae, 769 F.2d at 54; In re Subpoenas to Local 478, International Union of Operating Engineers and Benefit Funds, 708 F.2d 65, 69 (2d Cir.1983); In re Katz, 623 F.2d at 124. The basis for such an exception is that absent the means of appeal, the movant would effectively be denied an avenue for review because he is not able to put himself in contempt to challenge the subpoena and it is unlikely that the target of the subpoena will place himself in contempt in order to appeal the rights of the person not served. National Super Spuds, 591 F.2d at 179; see In Re Grand Jury Proceedings (Vargas), 723 F.2d 1461, 1464-65 (10th Cir.1983).
 
 
 6
 Friedman, therefore, can intervene to quash or modify the subpoena only if he falls within the Perlman exception. We find that Perlman does not apply because, as Judge Friendly has noted, "[w]hatever the validity of [the Perlman ] exception may be in cases where the third party is disinterested or independent, it becomes more difficult to sustain where the target of the disclosure order is both subject to the control of the person or entity asserting the privilege and is a participant in the relationship out of which the privilege emerges." National Super Spuds, 591 F.2d at 179 n. 7 (citations omitted).
 
 
 7
 There has been no indication that the Committee, and Friedman, its Chairman, assert separate privileges or separate interests. Indeed, both the Committee and Friedman claim that the subpoena threatens their First Amendment rights of political association and expression. Under these circumstances, application of Perlman to allow an immediate appeal would defeat the purpose of the general rule proscribing interlocutory consideration of a denial of a motion to quash absent a contempt citation. In addition, appellants' civil action for a preliminary injunction enjoining enforcement of the subpoena merely sought to achieve that which the Cobbledick rule forbids, that is, an immediate appeal without the risk of contempt of the denial of a motion to quash the subpoena.
 
 
 8
 The stay is vacated and the appeals are dismissed. The mandate, having been withheld until now, shall issue forthwith.